UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**           **CRIMINAL NO. 6:25-CR-00322**

**VERSUS**                              **JUDGE DAVID C. JOSEPH**

**JAVON ROBERTSON**                     **MAGISTRATE JUDGE DAVID J. AYO**

MEMORANDUM RULING

On November 19, 2025, a federal grand jury in this district returned an Indictment, charging the Defendant Javon Robertson (the "Defendant") with two counts of possession with intent to distribute controlled substances (methamphetamine and cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B). [Doc. 1]. Now before the Court is DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM PRIVATE RESIDENCE (the "Motion"). [Doc. 26]. The Defendant moves to suppress evidence seized on July 29, 2025, from his residence in Lafayette, Louisiana, arguing the state search warrant was issued on a "bare bones" affidavit and lacked probable cause and a nexus to the residence. [Doc. 26-1]. The United States opposes the Motion. [Doc. 30]. Finding that no hearing is necessary, and for the reasons discussed below, the Motion is DENIED.

I.   **Background**

In July of 2025, the Lafayette Parish Sheriff's Office Narcotics Unit opened an investigation and began surveillance of the Defendant's residence based on information that a "subject at the residence" was selling large amounts of illegal narcotics. While surveilling, agents saw the Defendant leave the residence, meet an

unknown person at a local store, and conduct a "hand-to-hand" transaction of suspected illegal drugs. Agents then contacted the recipient, who admitted possessing illegal narcotics. A subsequent search of her vehicle yielded approximately 21 grams of marijuana, and she stated that she had just purchased the drugs from the Defendant. On July 23, 2025, Agent Jason Bradford of the Lafayette Parish Sheriff's Office applied for a warrant to search the Defendant's residence. The affidavit in support of the search warrant application states as follows:

> On July 23, 2025 Lafayette Parish Sheriff's Office Narcotics Unit, (LPSONU) was conducting surveillance at the residence of [] Crossing, due to agents receiving information on the subject at the residence selling large amounts of illegal narcotics.
>
> While conducting surveillance at the residence. [sic] Agents observed the suspect leave from his residence and met with an unknown subject at a local store. Agents observed a hand to hand transaction, with a clear plastic bag being handed to the unknown subject. Shortly after the subject left the parking and traveled to another local store. Due to what agents observed, agents made contact with the subject, who immediately admitted to having illegal narcotics inside her vehicle. Also, the subject's vehicle was emitting the plain odor of marijuana.
>
> A probable cause search of the vehicle was conducted, which agents located approximately 21 grams of marijuana. Agents then spoke with the subject who stated she just bough[t] the illegal narcotics from the target of the investigation.
>
> Based on the surveillance, the narcotics transaction observed, and the recovery of physical evidence from the recipient, affiant believes that evidence of illegal narcotics distribution, including marijuana, may still be present at the residence located at [] Crossing.
>
> Due to the aforementioned information Agent Bradford is requesting a search warrant for the residence of [] Crossing to further investigate the distribution of illegal narcotics by the target of the investigation.

[Doc. 26-2].

A state judge issued the warrant the same day, authorizing law enforcement to search the residence and seize narcotics and "related items associated with the distribution, selling, packaging, and possession of illegal narcotics." [Doc. 26-3]. Law enforcement agents executed the warrant on July 29, 2025, and seized controlled substances, drug distribution paraphernalia (including two hydraulic presses and a currency counter), and nearly $80,000 in currency – leading to the federal charges.

## II.  Legal Standard

The Defendant's sole contention in the Motion is that the evidence should be suppressed "because the search was conducted after a state court judge issued a search warrant supported by a bare bones affidavit plainly and patently insufficient." [Doc. 26].

Because the search of Defendant's home was conducted pursuant to a search warrant, "[f]irst, we determine whether the good-faith exception to the exclusionary rule applies." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). Under the good-faith exception, "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible" even if a reviewing court later determines that the affidavit on which the warrant was based was insufficient to establish probable cause for the search. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). However, the good-faith exception is inapplicable if the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*, at 320 (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). These "'[b]are bones' affidavits [are those that] contain wholly conclusory statements, which lack

the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* at 321. Bare-bones affidavits "do not detail any facts, they allege only conclusions." *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022) (en banc).

III. Analysis

    A. **Good-Faith Reliance**

Here, a review of the affidavit demonstrates that it does contain specific factual averments, specifically that: (i) surveillance was initiated based on information of large-scale drug sales; (ii) agents saw the Defendant leave his residence and go directly to a meeting during which a hand-to-hand drug transaction occurred; (iii) the recipient of the hand-to-hand transaction admitted that she had purchased drugs from the Defendant; and (iv) approximately 21 grams of marijuana were recovered from the recipient's vehicle. While additional facts establishing a definitive nexus between the Defendant's residence and his drug distribution activities certainly would have bolstered the affidavit, courts should refrain from "second guess[ing] the magistrate who authorized the warrant" when looking at the affidavit through the lens of the good-faith exception. *Morton*, 46 F.4th 331, 336 (5th Cir. 2022). Rather, the question is simply "whether officers objectively could reasonably believe that there was" such a nexus between the drug activity and residence. *United States v. Bell*, 832 F. App'x 298, 301 (5th Cir. 2020) (citing *Satterwhite*, 980 F.2d at 320). In this regard, the Court is cognizant of its role. Binding precedent is clear that "the resolution of doubtful or marginal cases ... should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109,

85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *see also United States v. Devaney*, 109 F.4th 322, 326 (5th Cir. 2024) ([a]n affidavit – though deficient or a "close call" with respect to probable cause – may nonetheless be "far from bare bones.").

On this record, the Court finds that the facts included in the affidavit support the officers' reasonable belief in this regard. The Court notes that the issues presented here are similar to those presented in the recent Fifth Circuit case of *United States v. Norman*, 129 F.4th 874 (5th Cir. 2025). In that case, the district court had determined the underlying affidavit was "barebones" where it failed to provide a factual nexus between a house in which the defendant spent the night and the drug distribution activity. The Fifth Circuit reversed, finding that the affidavit was not "bare bones," and thus the good-faith exception to the exclusionary rule applied, where the affidavit provided facts that allowed for the judge to "draw reasonable, common-sense inferences" of a nexus between the residence and drug activity. *Id.* at 877 (finding that the affidavit included, among other things, facts specifying the defendant going to and from the subject house in close proximity to known drug activity). Likewise, here, the subject affidavit provided information substantiating that the Defendant travelled directly from his known residence to conduct a drug transaction – allowing for an inference that he kept the drugs in his residence. These statements go beyond a conclusory recitation of belief and provide "meat on the bones," distinguishing this affidavit from "textbook" bare-bones examples. See *Morton*, 46 F.4th 331, 337 (5th Cir. 2022) (describing bare-bones affidavits as wholly conclusory).

At bottom, Agent Bradford's affidavit "put all the relevant 'facts and circumstances' before the state judge, allowing him to 'independently determine' if the ... probable-cause standard had been met." *Devaney*, 109 F.4th at 327 (quoting *Morton*, 46 F.4th at 337–38). Because Agent Bradford's affidavit provided facts from which the state judge could draw a reasonable inference of probable cause, it was not "bare-bones." Accordingly, the Court finds the officers acted in objectively reasonable reliance on a warrant in searching the Defendant's residence. And because the good-faith exception applies, this Court's analysis ends, and it need not reach the question of probable cause. *Norman*, 129 F.4th at 877 (5th Cir. 2025).

### B.    *Franks* Hearing

To be entitled to a *Franks* hearing, the Defendant must make a preliminary showing that: "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Here, the Defendant hints at entitlement to a *Franks* hearing, but fails to include in his Motion or any attachments the requisite preliminary showing that the affiant included a knowingly or recklessly false statement, or omitted material information, and that such statement or omission was necessary to the finding of probable cause. An evidentiary hearing is therefore not warranted on this showing.

### IV.    Conclusion

For the reasons discussed, the Court finds that the law enforcement officers executing the subject search warrant reasonably relied, in good faith, on a warrant

supported by more than a "bare bones" affidavit. And because the Defendant has failed to meet the requisite burden under the *Franks v. Delaware* precedent, the Court determines that a hearing is not required. The Motion to Suppress is therefore DENIED.

For the foregoing reasons,

IT IS HEREBY ORDERED that DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM PRIVATE RESIDENCE [Doc. 26] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 26th day of February 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE